United States District Court
Eastern District of Michigan
Southern Division

United States of America,

    Plaintiff,

v.

Donavon Law,

    Defendant,

No. 21-cr-20463

Hon. Denise Page Hood

---

**Government's Response to Law's Motion (ECF No. 42)**

---

While on probation for three of his nine prior felony convictions, Donavon Law fired a stolen police service weapon in a targeted shooting and car chase through Ypsilanti. Law pled guilty to one count of 18 U.S.C. § 922(g)(1) on November 4, 2021. This Court sentenced Law to 63 months in custody on August 10, 2022. In October 2024, Law sent this Court a five page document titled "Motion For Sentence Reduction/Modification of Sentence". (ECF No. 42). In this document, Law moves for various forms of relief. The government responds to each point below. Law's request should be denied and his original sentence should stand.

## BACKGROUND

This case involves Law's use and possession of a stolen Wayne County Sheriff's Office service firearm and an extended magazine while under court supervision.

### a. A shooting occurred in Ypsilanti, Michigan on April 8, 2021.

In the afternoon of April 8, 2021, a suspect on a white moped scooter chased a car through Superior Township, Ypsilanti Township, and Ypsilanti City. Surveillance video captured the following image of the suspect.

**Image 1**



This area included Eastern Michigan University's campus. During the course of this chase, the suspect on the white moped scooter fired gunshots at the car. The shooting and chase ultimately caused the victim to crash his car.

b. **Law was identified as a suspect in this shooting based on his Facebook activity.**

Law enforcement identified a Facebook account in Law's name that included multiple profile photos of Law. As depicted in Images 2 and 3 below, hours after the shooting, Law posted statements on Facebook indicating that he committed the April 8, 2021, shooting.

| Image 2 | Image 3 |
|---|---|

 

On April 13, 2021, Law sent Facebook messages about the April 8, 2021, scooter shooting to an account in the name of Y.F. In these messages, Law sent Y.F. photographs of the Washtenaw County Sheriff's Office public release seeking information on the April 8, 2021, shooting. This public release included a surveillance photograph of the shooter wearing a white and red hockey mask while riding the white moped scooter, as depicted in Image 1 above. Law stated "Maaan

3

every time I same ima chill make the news" and "made crime of the D/ MLive." Law's Facebook account also included a selfie style photograph of the same white and red hockey mask, and a video of Law sitting on a white moped scooter with a Sig Sauer in his pocket.

### c. Law's Facebook posts link him to the purchase of a laser sight and extended magazine two weeks before the shooting.

Law's Facebook also included an image of himself inside a gun store. Law enforcement was able to identify this store as Cabela's in Dundee, Michigan. Surveillance video from this store shows a suspect believed to be Law (based on clothing consistent with the picture Law posted to his Facebook account) make a purchase. The receipt for this purchase indicates the suspect purchased an extended magazine for a Sig Sauer P226 firearm and a Crimson Trace laser sight. This laser sight is consistent with Law's Facebook post lamenting paying "$250 for this Beam just to miss EVERY LAST SHOT today!!"

### d. Law possessed a Sig Sauer pistol on April 30, 2021.

During the investigation of the April 8, 2021, shooting, law enforcement discovered that Law had a valid and outstanding warrant for his arrest regarding a probation violation in Wayne County. On April 30, 2021, police were conducting surveillance on Law. Police stopped Law as he was driving a car. At the time, Law's juvenile son was sitting in the front passenger seat. Upon approaching the car, officers observed a Sig Sauer, model P226, 9mm caliber handgun, with serial

4

number UU628285, in the front center console of the car. The Sig Sauer was loaded with 10 rounds of ammunition and fitted with a Crimson Trace weapons light/laser sight. A Pro Mag extended magazine was recovered from the backseat of Law's car. These items are consistent with the laser sight and extended magazine purchased from Cabela's.

### e. NIBIN results further tied Law to the April 8, 2021, shooting.

Law enforcement recovered shell casings from the path of the car/scooter chase and shooting. After recovering the Sig Sauer from Law's car on April 30, 2021, police ran NIBIN testing. This testing confirmed that shell casings from the shooting were fired from the recovered Sig Sauer.

Following Law's arrest, police also located the white moped scooter used in the shooting in a parking lot near Law's apartment building.

### f. The recovered Sig Sauer is a stolen duty weapon from the Wayne County Sheriff's Office.

The recovered Sig Sauer is engraved with a serial number and an identification number from the Wayne County Sheriff's Office; WCS****. The firearm was reported stolen out of Southfield Police Department.

Law appears to have been aware of the significance of the WCS**** engraving. Law posted various photographs of this firearm on social media prior to his arrest on April 30, 2021. In one close up image of the gun, Law covered the WCS**** engraving with a piece of white paper. Police believe Law purposefully

5

covered this engraving to avoid easily identifying the recovered firearm as a stolen service weapon.

### g. While detained, Law attempted to escape from prison.

On July 16, 2021, Law was involved in a fight while detained at Livingston County Jail. Thereafter, Law was moved to a holding area. While alone in this holding area, Law covered the security cameras with toilet paper to obscure their view. Correctional officers ordered Law to remove the toilet paper. Law complied. After an additional 40 minutes, correctional officers returned to the holding area to move Law back to his cell. At this time, however, Law was not present in the holding area. Correctional officers entered the holding area and found that the security panel in the ceiling had been removed. Correctional officers heard a muffled voice coming from the ceiling. Law indicated that he was in the ceiling. Correctional officers ordered Law to return to the holding cell. Law complied.

Correctional officers thereafter reviewed a recording of the incident, which showed Law breaking through the ceiling security panel. Law had wrapped his hands in toilet paper and pulled himself into the ceiling.

### h. Law was sentenced to 63 months in custody.

Law "has a long history of criminal conduct and criminal justice contacts." (PSR ¶ 93.) His prior sentences stem from "several instances of possessing firearms and home invasion." (PSR ¶ 93.) "Law has experienced a wide range of criminal justice

6

interventions from several different jurisdictions." (PSR ¶ 92.) His adjustment to court supervision has been poor. He has a history of committing new criminal conduct while under supervision. (See, e.g., PSR ¶ 38-40.)

At the time of his sentencing, Law received a two point enhancement to his criminal history score, placing him in category VI, for committing this offense under court supervision. His guidelines at the sentencing hearing were 92 to 115 months. This Court sentenced Law to 63 months.

As noted by Probation, following the Amendment to Section 821, Law only receives one point for committing this offense under court supervision, yielding a criminal history score of V and revised guidelines of 84 to 105 months.

## ARGUMENT

**A. Law's Sentence Should Not be Modified; His Current Sentence is Just Given the Circumstances and is Below Law's Revised Guidelines.**

In Part A to Amendment 821 to the Sentencing Guidelines, the Sentencing Commission altered the "status points" provision regarding criminal history, which now appears in Section 4A1.1(e). The amended provision only adds "1 point if the defendant (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S.S.G. § 4A1.1(e). Thus, a person who otherwise presents 7 criminal history points or more now receives 1 additional "status" criminal history point, instead of

7

2, while a person who otherwise presents 6 criminal history points or fewer receives no status points.

On August 24, 2023, the Commission pronounced that this change applies retroactively. The Commission further directed that a court granting relief may not order the release of a defendant to occur any earlier than February 1, 2024. *See* U.S.S.G. § 1B1.10(e)(2) (Nov. 1, 2023).

Under the amended provision as applied to Law, he would now receive one additional point for committing the felon in possession offense while on parole. His criminal history points lower to 12 and his criminal history category lowers from VI to V. His new guidelines range is 84 to 105 months.

A defendant's sentence can only be modified pursuant to 18 U.S.C. § 3582(c)(2), which provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

In Section 1B1.10 of the Guidelines, the Sentencing Commission has identified the amendments which may be applied retroactively pursuant to this authority, including Part A of Amendment 821, and articulated the proper procedure for implementing those amendments. USSG § 1B1.10 (a), (d).

In *Dillon v. United States*, 560 U.S. 817 (2010), the Supreme Court addressed the process for application of a retroactive guideline amendment and declared: "Any reduction must be consistent with applicable policy statements issued by the Sentencing Commission." *Id.* at 821. *Dillon* requires district courts to follow a two-step approach:

> **At step one**, § 3582(c)(2) requires the court to follow the Commission's instructions in §1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized. Specifically, §1B1.10(b)(1) requires the court to begin by "determin[ing] the amended guideline range that would have been applicable to the defendant" had the relevant amendment been in effect at the time of the initial sentencing. "In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." *Ibid.*
>
> Consistent with the limited nature of § 3582(c)(2) proceedings, §1B1.10(b)(2) also confines the extent of the reduction authorized. Courts generally may "not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) . . . to a term that is less than the minimum of the amended guideline range" produced by the substitution. §1B1.10(b)(2)(A). . . .
>
> **At step two** of the inquiry, § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case.

*Dillon*, 560 U.S. at 827 (emphasis added). The Supreme Court also made clear that sentence modification under § 3582(c) authorizes "only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Id.* at 826; *see*

*also United States v. Domenech*, 675 F. App'x 519, 526 (6th Cir. 2017) (unpublished) ("[O]ur case law "makes clear that sentencing modification is a discretionary, limited proceeding that does not involve full-scale resentencing.") (quoting *United States v. Daniel*, 414 F. App'x 806, 809 (6th Cir. 2011)).

Although the United States agrees with the Probation Department that Law is eligible for a reduction in sentence under step one, he should not receive a reduction following step two of the inquiry, which requires the Court to consider the § 3553(a) factors and make a discretionary decision about whether relief is warranted in the specific circumstances at hand. *See* U.S.S.G. § 1B1.10 note 1(B)(i); *see also* U.S.S.G. § 1B1.10 background (". . . such a discretionary reduction does not otherwise affect the lawfulness of a previously imposed sentence, does not authorize a reduction in any other component of the sentence, and does not entitle a defendant to a reduced term of imprisonment as a matter of right."). A defendant is not entitled to a sentencing reduction merely because he is eligible at step one. *United States v. Greenwood*, 521 F. App'x 544, 548 (6th Cir. 2013) (unpublished). The district court's decision to reduce a sentence after considering the § 3553(a) factors is entirely discretionary. *Id.*; *see also United States v. Ursery*, 109 F.3d 1129, 1137 (6th Cir. 1997) ("[A] district court has the discretion to deny a section 3582(c)(2) motion, even if the retroactive amendment has lowered the guideline range.").

10

Subject to the limits set forth in Section 1B1.10(b), the Court may consider all pertinent information in applying the Section 3553(a) factors and determining whether and by how much to reduce the defendant's sentence. Application note 1(B)(ii) directs that "[t]he court shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment." Application note 1(B)(iii) further directs that "[t]he court may consider post-sentencing conduct of the defendant that occurred after the imposition of the original term of imprisonment." The application note explains that these factors are relevant in determining whether and by how much to reduce a sentence, but only within the limits set forth in Section 1B1.10(b).

The nature and seriousness of Law's offense establish that a sentence reduction is inappropriate. While on parole for multiple prior felonies involving firearms and home invasion, Law possessed a stolen police service weapon. Law used the same stolen gun in a shooting; then repeatedly bragged about committing the shooting. While detained, Law got into a fight and attempted to escape from custody. Law's actions show complete disrespect for the law and contempt for following the rules.

**B. Law's Facial Statutory Challenge Fails.**

Law again raises a facial challenge to section 922(g)(1). (*See, e.g.,* ECF No. 41). The Sixth Circuit recently held that section 922(g)(1) "is not susceptible to a facial

11

challenge." *Unites States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024). Law is not entitled to any relief on this ground.

### C. Law's Request Regarding Good Time Should be Directed to the Bureau of Prisons

Finally, the United States acknowledges Law's request for good time credit, and notes that such credit is a matter for the Bureau of Prisons (BOP). BOP, not this Court, calculates good time credit.

## CONCLUSION

Law's motion should be denied.

                                            Respectfully Submitted,

                                            Dawn N. Ison
                                            United States Attorney

                                            *s/Sarah Youngblood*
                                            Sarah Youngblood
                                            Assistant United States Attorney
                                            211 W. Fort Street, Suite 2001
                                            Detroit, MI 48226
                                            Sarah.Youngblood@usdoj.gov
                                            (313) 226-9581

Dated:  December 4, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2024, I caused the foregoing document to be electronically filed with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF participants of record.

I also certify that I sent pro se defendant a copy of the document, via first class mail to:

Donavon Law
Prisoner No. 49358-509
USP Hazelton
U.S. Penitentiary
P.O. Box 2000
Bruceton Mills, WV 26525

*s/Sarah Youngblood*
Sarah Youngblood
Assistant United States Attorney